UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 30, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Edwin C. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-1690-CDA

Dear Counsel:

On June 11, 2024, Plaintiff Edwin C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on July 31, 2018, alleging a disability onset of July 31, 2018. Tr. 169-72. Plaintiff's claims were denied initially and on reconsideration. Tr. 104-07, 110-13. On July 6, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 44-78. Following the hearing, on August 31, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 26-39. The Appeals Council denied Plaintiff's request for review. Tr. 6-8. On October 19, 2022, this Court remanded the case to the Commissioner for further consideration. Tr. 639-43. On November 9, 2023, a second hearing was held before the same ALJ. Tr. 581-612. On April 12, 2024, the ALJ issued their decision and found that Plaintiff was not disabled. Tr. 560-74. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on June 11, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of July 31, 2018, through his date last insured of December 31, 2023." Tr. 565. At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of "asthma; prosthetic left eye; bilateral osteoarthritis and bursitis of the knees; nicotine dependence; and, as of March 2022, chronic obstructive pulmonary disease." Tr. 566 (internal citations omitted). The ALJ also determined that Plaintiff suffered from the non-severe impairments of "essential hypertension, hyperlipidemia, nonobstructive atherosclerosis of the coronary artery, chronic kidney disease, gastroesophageal reflux disease (GERD), disease of the salivary gland, and type 2 diabetes mellitus." Tr. 566 (internal citations omitted). At step three, the ALJ determined that, through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 566-67. Despite these impairments, the ALJ determined that, through the date last insured, Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c). He could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk approximately 6 hours per 8 hour workday and sit 6 or more hours per 8 hour workday with normal breaks. He could frequently climb ramps and stairs, stoop, and crouch, and occasionally kneel and crawl. He could tolerate occasional exposure to concentrated respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas, extreme cold, extreme hot, wetness, and humidity. He was limited to occupations that could be performed with only monocular vision; and was able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, and approaching people or vehicles, but had to avoid all exposure to hazards of ladders, ropes, and scaffolds, high exposed places, and operating dangerous vehicles and machinery.

Tr. 567-68. The ALJ determined that, through the date last insured, Plaintiff was unable to perform

past relevant work as a roofer laborer, helper (DOT[3] #869.687-026) or lead worker, roofer construction (DOT #866.381-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 573. Therefore, the ALJ concluded that Plaintiff was not disabled "at any time from July 31, 2018, the alleged onset date, through December 31, 2023, the date last insured." Tr. 574.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises four arguments on appeal, insisting that the ALJ (1) failed to sufficiently explain why Plaintiff's chronic obstructive pulmonary disease ("COPD") became severe as of March 2022; (2) erred by relying on state agency consultants' opinions that conflict with the ALJ's step-two determinations; (3) erred by discussing Plaintiff's nicotine dependence; and (4) improperly relied on conclusions reached in the ALJ's prior, vacated decision. ECF 11, at 8-18; ECF 14, at 1-4. Defendant counters that the ALJ reasonably found Plaintiff's COPD to be severe as of March 2022, and any step two error is harmless; the ALJ properly explained her consideration of the prior administrative medical findings; the ALJ appropriately considered Plaintiff's nicotine dependence as there was no regulation or Agency procedure prohibiting her from doing so; and the ALJ did not improperly rely on her previous, vacated decision. ECF 13, at 6-16.

    A. <u>The ALJ did not err in assessing Plaintiff's COPD.</u>

"At step two of the five-step sequential evaluation, the ALJ determines if the claimant has

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

an impairment, or a combination of impairments, that is severe and meets the duration requirement." *Sharon W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2707, 2019 WL 2234499, at *1 (D. Md. May 23, 2019). An impairment is "severe" if it "significantly limit[s the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). If the ALJ finds any impairment to be severe, "the ALJ continues with the sequential evaluation and considers how each of the claimant's impairments impacts her ability to perform work." *Sharon W.*, 2019 WL 2234499, at *1. In formulating a claimant's RFC, the ALJ "consider[s] all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe'[.]" 20 C.F.R § 404.1545(a)(2); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(a)(2), 416.945(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (italics omitted) (recognizing that step two of the sequential evaluation process is "merely a threshold determination meant to screen out weak claims" and is "not meant to identify the impairments that should be taken into account when determining the RFC").

Here, at step two, the ALJ determined that Plaintiff's COPD constituted a severe impairment as of March 2022. Tr. 566. Plaintiff argues that the ALJ's "decision regarding the onset and severity of Plaintiff's COPD is materially lacking in several respects." ECF 11, at 12. For example, Plaintiff cites to treatment records showing that Plaintiff had diagnoses and symptoms of COPD prior to 2022. *Id.*, at 12-13. Plaintiff argues that the ALJ failed to evaluate whether, prior to March 2022, Plaintiff's COPD was a medically determinable impairment that was non-severe or not medically determinable, infecting the ALJ's RFC assessment. *Id.*, at 13-15. Plaintiff is correct that the ALJ's step two evaluation did not explain why Plaintiff's COPD was severe as of March 2022, but not before that date, and whether her COPD was non-severe or not medically determinable prior to March 2022.

Defendant argues that even if the ALJ erred at step two, such error was harmless. ECF 13, at 11-12. The Court agrees. "Courts have found that an ALJ's failure to consider whether a particular condition constitutes a severe impairment [or a medically determinable impairment] at step two may be harmless error if the ALJ determined that a claimant has at least one other severe impairment and fully considered the condition in question, along with all other impairments, at the subsequent steps." *Crystal S. v. Kijakazi*, No. MJM-20-3717, 2022 WL 4539717, at *3 (D. Md. Sept. 28, 2022) (citing *Baker v. Astrue*, No. SAG-10-1045, 2012 WL 12751, at *3 (D. Md. Jan. 3, 2012)). Moreover, even if the ALJ failed to discuss Plaintiff's COPD at all at step two, "there is no prejudice to the [plaintiff] if the ALJ sufficiently considers the effects of that impairment at subsequent steps." *Fountain v. Astrue*, No. CBD-11-1884, 2013 WL 145873, at *4 (D. Md. Jan. 11, 2013).

To be sure, at step three, the ALJ addressed Plaintiff's COPD, and found that Plaintiff's COPD did not meet listing 3.01. *See* Tr. 567. Moreover, the ALJ evaluated Plaintiff's COPD throughout the RFC assessment. The ALJ acknowledged that Plaintiff alleged disability due to COPD and that Plaintiff reported coughing, shortness of breath, loss of breath during sleep, low

energy, getting tired quickly, and chest pain. Tr. 568-69. The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged systems; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," such as Plaintiff's "ability to engage in a wide range of daily activities as described in his Function Report." Tr. 569.

The ALJ elaborated that with respect to Plaintiff's "pulmonary impairments, examinations revealed good air movement in the lungs without wheezing, rales rhonchi, or crackles" and that his "symptoms responded well to inhalers and medication otherwise." Tr. 569. The ALJ then engaged in a narrative discussion of Plaintiff's medical evidence as to Plaintiff's COPD before and after March 2022, spanning three pages and citing to specific evidence in the record. *See e.g.*, Tr. 569 (Plaintiff exhibited "normal respiratory functioning" in July 2018; in October 2018, Plaintiff noted "intermittent chest pain for two weeks" but in February 2019, Plaintiff "reported no chest pain, palpitations, shortness of breath or cough and had a normal physical examination."); Tr. 570 (In August 2019, Plaintiff "complained of shortness of breath, wheezing, cough and chest tightness and reported that he had recently quit smoking" but on examination, Plaintiff's "oxygen saturation was 98% on room air, his lungs were clear to auscultation and percussion, and he had good air movement"; in February 2019, pulmonary function testing showed "moderate obstructive ventilatory defect with near significant bronchodilator response, normal diffusion capacity, and significantly reduced FEV1 and FVC compared to prior testing in 2015"); Tr. 571 (citing to examinations with Plaintiff's pulmonologist in February 2021 and December 2021, observing that on subsequent pulmonary examinations, Plaintiff's "pulmonary effort was observed to be normal, and he was without respiratory distress."); Tr. 570 (In 2022, Plaintiff was "diagnosed with COPD related to cigarette smoking with nicotine dependence," but "examinations routinely revealed normal breath sounds, good air movement, and normal respiratory effort."); Tr. 571 (noting that Plaintiff's June 2023 CT scan was negative for lung cancer; at a June 2023 pulmonology visit, Plaintiff exhibited "normal pulmonary effort with slight wheezing with forced expiration but no respiratory distress" but that he was still smoking; in March 2023, Plaintiff required an "ER visit for shortness of breath secondary to a COPD exacerbation," but he was started on prednisone and discharged). As such, the ALJ thoroughly assessed Plaintiff's COPD both before and after March 2022.

Plaintiff argues that the ALJ's step two analysis, as to the onset and severity of COPD, is unsupported by substantial evidence because the ALJ failed to appropriately consider several treatment records and resolve inconsistencies in the evidence. ECF 11, at 12-13; ECF 14, at 1-2. However, an ALJ need not discuss every piece of evidence of record or follow a particular format in conducting their analysis. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). As noted above, the ALJ considered the objective medical evidence of Plaintiff's COPD throughout the assessment of Plaintiff's RFC. Plaintiff disagrees with how the ALJ evaluated Plaintiff's COPD. But this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision."

*Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, to the extent that the ALJ could have engaged in a more thorough discussion of Plaintiff's COPD at step two, the ALJ discussed and considered Plaintiff's COPD in the formulation of Plaintiff's RFC. Because Plaintiff made the threshold showing that several of his impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments when determining Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Any step two error, therefore, would not require remand.

B. The ALJ properly considered the prior administrative medical findings.

Relatedly, Plaintiff argues that the ALJ, in assessing Plaintiff's RFC, improperly relied on 2019 opinions by state agency medical consultants because these opinions did not contain a function-by-function analysis of all of Plaintiff's severe and non-severe impairments. ECF 11, at 15-16. Plaintiff posits that the ALJ's reliance on the 2019 state agency consultants' opinions conflicts with the ALJ's step-two determination. *Id.* Specifically, the consultants' opined, in 2019, that Plaintiff had severe impairments of COPD and low vision; yet the ALJ found Plaintiff's severe impairments to include bilateral osteoarthritis and bursitis of the knees and, as of March 2022, COPD. *Id.* The Court finds these arguments unavailing.

In assessing Plaintiff's RFC, the ALJ considered the 2019 opinions of the state agency medical consultants, who opined that Plaintiff "had severe impairments of COPD and low vision and was capable of performing medium work with postural, visual, and environmental limitations." Tr. 572. The ALJ found the consultants' opinions "partially persuasive," noting that "the evidence in the file at the hearing level further indicates that [Plaintiff] had additional severe impairments, including bilateral knee osteoarthritis and bursitis and tobacco dependence." Tr. 572. The ALJ concluded that the "limitation to medium work is supported by the cited explanation in the [state agency medical consultants' opinions] and consistent with the mild to moderate findings on repeated examinations, the history of conservative routine treatment, and by [Plaintiff's] participation in a wide range of daily activities as described in his Function Report." Tr. 572-73.

Plaintiff argues that the ALJ should have explained how the inconsistencies between the consultants' opinions and the step-two determination were considered and resolved in finding Plaintiff capable of medium exertional work. ECF 11, at 13-15 (citing SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). The Court disagrees. The ALJ did not rely solely on the state agency medical consultants' opinions in assessing Plaintiff's RFC. Instead, the ALJ explicitly stated that the limitation to medium work was based on, not only the consultants' opinions, but also the mild to moderate findings on repeated examinations, history of conservative routine treatment, and Plaintiff's daily activities. *See* Tr. 572-73.

A careful review of the ALJ's decision reveals that the RFC assessment is supported by substantial evidence. The ALJ acknowledged that, in Plaintiff's Function Report, Plaintiff

"reported that his symptoms affected his abilities to stand, walk, lift, squat, bend, kneel, and climb stairs, and he could walk for only for 1 block before having to stop and rest." Tr. 568. The ALJ observed, however, that Plaintiff "admitted that he engaged in a wide range of daily activities, including personal care, travelling (by walking and using public transportation), [and] shopping in stores." Tr. 568. Moreover, the ALJ noted that Plaintiff "testified that he is unable to work because he can no longer perform the physical demands of his prior work, including climbing ladders, lifting heavy weights, or standing for long periods without sitting due to arthritis pain in his knees." Tr. 568. The ALJ also acknowledged that Plaintiff "testified that he was discharged from his last job as his bilateral knee pain and breathing difficulties progressed and he had to sit too often. He testified that he gets bilateral knee injections for pain, but he can walk for only about 40 to 50 yards before needing to stop and rest." Tr. 568-69. Plaintiff testified that "he also has right ankle pain and swelling despite undergoing surgery, but he still tries to walk every day for exercise." Tr. 569.

As noted above, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms "are inconsistent with the medical evidence, as well as his ability to engage in a wide range of daily activities as he described in his Function Report." Tr. 569. The ALJ observed that Plaintiff's function report "was completed before his DLI expired and indicated a less restricted functional capacity than he currently testified to." Tr. 569. The ALJ found that Plaintiff's treatment records revealed that Plaintiff "had mild findings on repeated physical examinations and received a conservative course of treatment and medications yielding good response." Tr. 569. The ALJ reasoned that the examinations indicated that Plaintiff "had only slightly decreased range of motion in the knees with normal motor strength and tone, sensation, and reflexes[,]" and that medical records consistently described him "as healthy appearing and having normal gait and ambulation." Tr. 569. The ALJ noted that, despite complaints of knee pain, treatment records showed "only steroid injections for mild grade 1 osteoarthritis" and "examination findings did not show physical limitations" resulting from past right knee surgery and right ankle surgery. Tr. 569.

After examining the objective medical evidence, the ALJ concluded that Plaintiff "had the residual functional capacity for medium work as defined in the regulations, except he could lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day due to intermittent mild to moderate shortness of breath and mild to moderate bilateral knee pain. He could engage in occasional climbing of ramps and stairs, stooping, and crouching and occasional kneeling and crawling due to mild to moderate bilateral knee pain." Tr. 572. Moreover, in evaluating the consultants' opinions, the ALJ observed that Plaintiff "complained of knee pain, yet examinations revealed only slight decreased range of motion of the knees, with normal motor and sensory findings and normal gait and ambulation." *Id.* The ALJ also noted that Plaintiff "continued to smoke cigarettes and complained of shortness of breath, but examinations showed no signs of respiratory distress and clear lungs to auscultation, while PFTs indicated moderate ventilatory defect." *Id.*

The ALJ concluded that "[g]iving [Plaintiff] the benefit of doubt with regard to his complaints of pain and shortness of breath, and also considering the limitations caused by his

monocular vision, the undersigned finds that he was more limited with respect to his abilities to perform postural movements and tolerate exposure to both heights/hazards and pulmonary irritants." Tr. 572. The ALJ found that the "limitation to medium work is supported by the cited explanation in the [state agency medical consultants' opinions] and consistent with the mild to moderate findings on repeated examinations, the history of conservative routine treatment, and by [Plaintiff's] participation in a wide range of daily activities as described in his Function Report." Tr. 572-73.

The objective medical evidence articulated by the ALJ supported their conclusion that Plaintiff's hearing testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 569. The Fourth Circuit has held that "[a]lthough a claimant's allegations about [their] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers[.]" *Craig*, 76 F.3d at 595; *see also Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (finding the claimant's claim that he was disabled not credible when "[h]is arthritis responded to conservative treatment, and his stomach pains were relieved by antacids. If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Plaintiff's disagreement with the ALJ's conclusions cannot displace such conclusions when they are, as here, supported by substantial evidence. Plaintiff's argument again amounts to a request to reweigh evidence and, once again, must fail.

C. <u>The ALJ did not err by discussing Plaintiff's nicotine dependence.</u>

Plaintiff first argues that the ALJ erred by finding nicotine dependence to be a severe impairment at step two. ECF 11, at 16. However, as the Commissioner correctly asserts, Plaintiff cites to no authority or regulation forbidding an ALJ from categorizing nicotine dependence as a severe impairment. *See* ECF 13, at 14. Plaintiff fails to explain why the ALJ's finding of nicotine dependence as a severe impairment impacted the determination of whether Plaintiff is disabled. As noted above, any step two error would not require remand, as step two is merely a threshold determination to screen out weak claims and the ALJ continued with the sequential evaluation process, properly considering all impairments in Plaintiff's RFC assessment. As such, Plaintiff's argument amounts to another request to reweigh evidence regarding the ALJ's step-two determination. For a third time, this tactic fails.

Plaintiff next argues that the ALJ improperly based Plaintiff's RFC on evidence of Plaintiff's nicotine use, asserting that the ALJ "discount[ed] Plaintiff's treatment for COPD and asthma, noting that they were 'in the setting of longstanding cigarette smoking'" and that Plaintiff "'continued to smoke cigarettes.'"[4] ECF 11, at 16-17. The Court finds Plaintiff's argument

---

[4] Plaintiff relies on SSR 18-3p as support for his assertion that Plaintiff's "nicotine use and smoking cessation are irrelevant to Plaintiff's disability status." ECF 11, at 16-17 (citing SSR 18-3p

unconvincing. Contrary to Plaintiff's assertion otherwise, the ALJ discussed Plaintiff's nicotine use in the context of its presence in the objective medical evidence, not by discounting Plaintiff's COPD and asthma symptoms. *See* Tr. 570 (Plaintiff "complained of shortness of breath, wheezing, cough and chest tightness and reported that he had recently quit smoking"), *id.* (Plaintiff "was also diagnosed with COPD related to cigarette smoking with nicotine dependence, in 2022"); Tr. 571 (Plaintiff "continued to follow with a pulmonologist for COPD and asthma in the setting of longstanding cigarette smoking."); *id.* (Plaintiff "underwent lung cancer screenings in light of his history of smoking."); *id.* (During a June 15, 2023 pulmonology visit, Plaintiff "demonstrated normal pulmonary effort with slight wheezing with forced expiration but no respiratory distress. [Plaintiff] had cut back but was still smoking."); Tr. 572 (In finding the consultants' opinions partially persuasive, the ALJ noted that Plaintiff "continued to smoke cigarettes and complained of shortness of breath, but examinations showed no signs of respiratory distress and clear lungs to auscultation, while PFTs indicated moderate ventilatory defect.").

The Commissioner asserts that "the ALJ merely repeated what was written in the medical record," and "the ALJ did not discount or downplay Plaintiff's conditions based only on his history smoking as Plaintiff suggests." ECF 13, at 14 (citing Tr. 798-99 (Plaintiff's medical provider noting that they "discussed the critical importance of immediate, complete, and permanent smoking cessation in the management of COPD.")). The Court agrees. As such, the Court finds that the ALJ did not err by discussing Plaintiff's nicotine dependence in the RFC assessment. *See Collison v. Astrue*, No. PWG-08-234, 2009 WL 3216658, at *3 (D. Md. Sept. 30, 2009) ("[A]n ALJ can consider a [c]laimant's failure to stop smoking in determining credibility when medical evidence shows that doctors recommended smoking cessation and that smoking impacted conditions such as COPD." (citing *Mouser v. Astrue*, 545 F.3d 634 (8th Cir. 2008)).

D. <u>The ALJ did not improperly rely on conclusions reached in her prior, vacated decision.</u>

Last, Plaintiff asserts that the ALJ erred by relying "upon conclusions reached in her prior [vacated and remanded] decision as support for her current RFC," citing the ALJ's references to "[a]s noted in the prior decision[.]" ECF 11, at 17. The Commissioner counters that despite the ALJ's use of that phrase, "there is no indication that the ALJ in fact reached any conclusions based only on her prior decision, rather than the record evidence that was also available at that time."

---

("Prescribed treatment does not include lifestyle modifications, such as dieting, exercise, or smoking cessation.")). However, SSR 18-3p is not applicable in this case. Pursuant to SSR 18-3p, an ALJ performs an analysis of failure to follow prescribed treatment only "after [the ALJ] find[s] that an individual is entitled to disability or eligible for statutory blindness benefits under titles II or XVI of the Act . . . . [The ALJ] will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled . . . ." 2018 WL 4945641, at *3 (Oct. 2, 2018); *Scott A. B. v. Kijakazi*, No. 21-CV-558-CDL, 2023 WL 2713991, at *5 n.2 (N.D. Okla. Mar. 30, 2023) (noting that SSR 18-3p "applies only when an ALJ has determined a claimant has a disabling impairment but finds that benefits should be denied because the claimant has refused to follow prescribed treatment"). Here, the ALJ never determined that Plaintiff was disabled. Instead, the ALJ found Plaintiff not disabled and capable of a reduced range of medium work.

*Edwin C. v. Bisignano*
Civil No. 24-1690-CDA
July 30, 2025
Page 10

ECF 13, at 15. The Commissioner cites, for example, the ALJ's reference in the RFC assessment that, "[a]s noted in the prior decision, treatment records for the period between the alleged onset date through the date of the prior decision revealed that [Plaintiff] had mild findings on repeated physical examinations and received a conservative course of treatment and medications yielding good response." *Id.* (citing Tr. 569). The Court is persuaded by the Commissioner's arguments. There is no indication that the ALJ improperly relied on her conclusions from the prior, vacated decision—instead, the ALJ's references to the prior decision are in the context of the treatment records present at the time of the prior decision. As such, the Court finds that the ALJ did not err by their references to the prior decision.

V. **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge